Citation Nr: 1719224 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 06-18 474 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Whether new and material evidence has been submitted to reopen a claim for service connection for residuals of frostbite of the right hand and, if so, whether service connection is warranted for residuals of frostbite of the right hand. 

2. Entitlement to a total disability rating based on individual unemployability (TDIU) due to service connected conditions. 


REPRESENTATION

Veteran represented by: Florida Department of Veterans Affairs


WITNESS AT HEARING ON APPEAL

The Veteran, his wife, and his son


ATTORNEY FOR THE BOARD

J. Unger, Associate Counsel 


INTRODUCTION

The Veteran served on active duty from November 1961 to November 1963 and from January 8 to March 24, 1964.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions dated in May 2009 and July 2013 issued by the St. Petersburg, Florida, Regional Office (RO). In the May 2009 rating decision, the RO increased the Veteran evaluation for his service-connected major depressive disorder (MDD) from 20 percent to 30 percent, effective July 9, 2008.

In April 2011, the Veteran, his wife and son appeared and offered testimony at a hearing before the undersigned, sitting at the RO. A transcript of that hearing is of record. 

Furthermore, the Board took jurisdiction of the claim for entitlement to a TDIU under Rice v. Shinseki, 22 Vet. App. 447 (2009), during the Board's prior decision in October 2012. 

In addition in October 2012, the Board denied the Veteran's claim for an increased rating for MDD. The Veteran appealed the Board's October 2012 decision to the United States Court of Appeals for Veterans Claims (Court). In a March 2013 Order, the Court endorsed a March 2013 Joint Motion for Remand (JMR) and vacated the October 2012 Board decision. The Board again denied the claim in December 2013. The Veteran appealed the Board's December 2013 decision to the Court, and in August 2014, the Court endorsed an August 2014 JMR and vacated the December 2013 Board decision. In a February 2105 decision, the Board concluded that the 30 percent evaluation assigned to the MDD was correct; it also denied entitlement to TDIU. The Veteran appealed this decision to the Court and in August 2015, the Court endorsed an August 2015 JMR and remanded the case back to the Board. In November 2015, the Board remanded the Veteran's claim for TDIU. The decision also awarded a 40 percent evaluation for the MDD, effective January 8, 2010. This part of the decision was not appealed to the Court and it is final. The TDIU claim has now been returned to the Board for further adjudication. 

In October 2016, the Veteran filed a claim for an increased rating for his service-connected MDD. The RO stated in April 2017 correspondence that the MDD claim was still pending and declined to accept the October 2016 claim. However, as noted, the Board had increased the MDD rating to 40 percent, effective January 8, 2010, in a November 2015 decision; because the Veteran had not appealed this decision to the Court, it is final. As a consequence, the Veteran's October 2016 statement is a new claim for an increased rating for the MDD and is hereby referred to the AOJ for appropriate action.

This appeal was processed using the Veterans Benefits Management System (VBMS) and Virtual VA paperless claims processing systems.


FINDINGS OF FACT

1. In a final decision issued in June 2008, the RO denied the claim for service connection for right hand frostbite.

2. Evidence added to the record since the final June 2008 denial is cumulative or redundant of the evidence of record at the time of the prior decision and does not raise a reasonable possibility of substantiating the Veteran's claim of entitlement to service connection for residuals of frostbite of the right hand.

3. The Veteran's service-connected disabilities do not render him unable to secure and follow a substantially gainful occupation



CONCLUSIONS OF LAW

1. The June 2008 rating decision that denied service connection for right hand frostbite is final. 38 U.S.C.A. § 7105 (c) (West 2014); 38 C.F.R. §§ 3.104, 20.302, 20.1103 (2016).

2. New and material evidence has not been received to reopen the claim of entitlement to service connection for residuals of frostbite of the right hand. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156 (a) (2016).

3. The criteria for a TDIU have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.340, 4.16 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VA's Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103 (a); 38 C.F.R. § 3.159 (b)(1). 

In Kent v. Nicholson, 20 Vet. App. 1 (2006), the Court held that the VCAA notice requirements in regard to new and material evidence claims require VA to send a specific notice letter to the claimant that: (1) notifies him or her of the evidence and information necessary to reopen the claim (i.e., describes what is meant by new and material evidence); (2) identifies what specific evidence is required to substantiate the element or elements needed for service connection that were found insufficient in the prior denial on the merits; and (3) provides general VCAA notice for the underlying service connection claim. 

In VAOPGCPREC 6-2014, VA's General Counsel recognized that, in Kent, supra, the Court held that, upon receipt of a claim to reopen, VA must "look at the bases for the denial in the prior decision and . . . [provide] a notice letter that describes what evidence would be necessary to substantiate th[e] element or elements ... that were found insufficient in the previous denial." However, it was further noted that, such holding in Kent, which required VA to provide case-specific notice upon receipt of a claim to reopen, is inconsistent with the subsequent Federal Circuit decisions in Vazquez-Flores v. Shinseki, 580 F.3d 1270, 1277 (Fed. Cir. 2009), and Wilson v. Mansfield, 506 F.3d 1055, 1059 (Fed. Cir. 2007), holding that section 5103(a)(1) is satisfied by "generic notice," i.e., notice that "identif[ies] the information and evidence necessary to substantiate the particular type of claim being asserted" by a claimant and rejecting the argument that the statute requires specific notice of missing evidence with respect to a particular claim. Further, subsequent to Kent, Congress revised 38 U.S.C. § 5103 (a) in Public Law 112-154 to authorize VA to provide notice under that section before VA receives the claim, such as by including the notice on standard application forms. Under the Federal Circuit's precedents and the revision made by Public Law 112-154, 38 U.S.C. § 5103(a)(1) cannot be construed to require notice tailored to the facts or circumstances of an individual claim. 

Therefore, VA's General Counsel determined that Kent is no longer controlling insofar as it construed former 38 U.S.C. § 5103 (a) to require that VA provide such case-specific notice to a claimant who has filed an application to reopen a previously denied claim and, pursuant to 38 U.S.C. § 5103 (a)(1), upon receipt of a claim to reopen a previously denied claim, VA is not required to provide notice of the information and evidence necessary to substantiate the particular factual element or elements that were found insufficient in the previous denial of the claim.

In Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), the Court held that the VCAA notice requirements of 38 U.S.C.A. § 5103 (a) and 38 C.F.R. § 3.159 (b) apply to all five elements of a service connection claim. Those five elements include: 1) Veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. 

In Pelegrini v. Principi, 18 Vet. App. 112 (2004), the Court held that a VCAA notice, as required by 38 U.S.C.A. § 5103 (a), must be provided to a claimant before the initial unfavorable AOJ decision on the claim for VA benefits.
 
As relevant to the Veteran's application to reopen the previously denied claim of entitlement to service connection for residuals of frostbite of the right hand, the Board finds that VA has satisfied its duty to notify under the VCAA. Specifically, an April 2013 letter, sent prior to the initial unfavorable decision issued in July 2013, informed the Veteran of the definition of new and material evidence and the evidence and information necessary to substantiate his underlying service connection claim. In this regard, the letter did specifically advise the Veteran that such claim had been previously denied and the bases for such denial, and it fulfilled VA's duty to notify as interpreted by VAOPGCPREC 6-2014. Moreover, a reasonable person could have been expected to understand what was needed to support the Veteran's application to reopen his claim of entitlement to service connection for residuals of frostbite of the right hand based on notice that was provided to him during the course of his appeal. Specifically, the July 2013 decision and March 2016 statement of the case informed the Veteran of the basis of the original denial and the date of such denial. See Sanders v. Nicholson, 487 F.3d 881, 889 (2007), rev'd on other grounds Shinseki v. Sanders, 129 S.Ct. 1696 (2009). Furthermore, the April 2013 letter informed of the Veteran and VA's respective responsibilities in obtaining such evidence and information. Additionally, such letter advised him of the information and evidence necessary to establish a disability rating and an effective date in accordance with Dingess/Hartman, supra. 

With respect to the Veteran's TDIU claim, a May 2014 letter, sent prior to the September 2014 rating decision and March 2017 supplemental statement of the case, detailed the elements of a TDIU claim, described the evidence and information necessary to substantiate the claim, and set forth the respective responsibilities of VA and the Veteran in obtaining such evidence and information. The May 2014 letter also informed the Veteran of the evidence and information necessary to establish an effective date in accordance with Dingess/Hartman, supra.

Relevant to the duty to assist, the Veteran's service treatment records as well as post-service VA treatment records have been obtained and considered. Therefore, the Board finds that VA has satisfied its duty to assist in this regard. Furthermore, the Veteran has not identified any additional, outstanding records that have not been requested or obtained. 

The Board notes that the Veteran has not been provided with a VA examination in connection with his claim pertaining to residuals of frostbite of the right hand; however, the VCAA and its implementing regulations include clear guidelines consistent with the intent of Congress regarding the timing and the scope of assistance VA will provide to a claimant who attempts to reopen a previously denied claim. See 38 C.F.R. § 3.159 (c)(1),(2) and (3). Such assistance includes obtaining service records, records in the custody of a Federal agency, and private records adequately identified by the claimant, but, prior to reopening a claim, there is no duty to obtain a VA medical examination or opinion. As the Veteran's claim for service connection for residuals of frostbite of the right hand is not reopened herein, there is no obligation on the part of VA to provide a medical examination or opinion in connection with his appeal. 

The Board notes that the Veteran has been afforded several VA examinations in conjunction with the claims upon which the Veteran's claim for a TDIU is based. Such VA examinations include those conducted in May and August 2009, July 2010, April and August 2011, July 2013, August and September 2014, and December 2015 to determine the severity of his depression, ulcer and tinnitus. Neither the Veteran nor his representative have alleged that these VA examinations are inadequate for rating purposes. Moreover, the Board finds that the examinations are adequate in order to evaluate the Veteran's service-connected conditions, and determine eligibility for a TDIU, as they include interviews with the Veteran, a review of the record, and full examinations, addressing the relevant rating criteria. Moreover, neither the Veteran nor his representative has alleged that his service-connected conditions have worsened in severity since the last VA examinations. Palczewski v. Nicholson, 21 Vet. App. 174 (2007) (the passage of time alone, without an allegation of worsening, does not warrant a new examination). 

Furthermore, as relevant to the Veteran's TDIU claim, the Board finds that an examination addressing all the functional impact of all of his service-connected disabilities, which includes depression, duodenal ulcer and tinnitus, is not warranted. In this regard, the United States Court of Appeals for the Federal Circuit (Federal Circuit) recently held that VA's duty to assist does not require obtaining a single medical opinion regarding the combined impact of all service-connected disabilities in TDIU cases. Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir 2013). Following and taking note of the Federal Circuit's decision in Geib, the Court stated in Floore v. Shinseki, 26 Vet. App. 376, 381 (2013), that the need for a combined-effects medical examination or opinion with regard to multiple-disability TDIU entitlement decisions is to be determined on a case-by-case basis, and depends on the evidence of record at the time of decision by the RO or the Board. In the instant case, such an examination is not necessary as the evidence of record, to specifically include VA examinations in December 2015, adequately address the functional impact of such disabilities. The Board finds that the VA examiners offered clear conclusions with supporting data as well as reasoned medical explanations connecting the two. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ("[A]medical opinion ... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions"). Therefore, the Board finds that the examination reports of record are adequate to adjudicate the Veteran's TDIU claim, and no further examination is necessary.

Finally, the Board finds that there was substantial compliance with its November 2015 remand directives. A remand by the Board confers upon the claimant, as a matter of law, the right to compliance with the remand order. Stegall v. West, 11 Vet. App. 268 (1998). Nonetheless, it is only substantial compliance, rather than strict compliance, with the terms of a remand that is required. See D'Aries v. Peake, 22 Vet. App. 97, 104 (2008) (finding substantial compliance where an opinion was provided by a neurologist as opposed to an internal medicine specialist requested by the Board); Dyment v. West, 13 Vet. App. 141 (1999).

In particular, the Board in November 2015 directed the AOJ to forward the case to the Director of Compensation Service for consideration of the assignment of a TDIU due to service-connected disability under 38 C.F.R. § 4.16(b), and then to subsequently readjudicate the appeal. Thereafter, the AOJ sent the case to the Director of Compensation Service for evaluation. In October 2016, the Director of Compensation Service evaluated the Veteran's case and issued a decision. Accordingly, the Board finds that there has been substantial compliance with the November 2015 Board remand directives and, therefore, no further action is necessary. See Stegall, supra; D'Aries, supra.

Additionally, in April 2011, the Veteran was provided an opportunity to set forth his contentions during the hearing before the undersigned Veterans Law Judge. In Bryant v. Shinseki, the Court held that 38 C.F.R. § 3.103 (c)(2) requires that the RO Decision Review Officer or Veterans Law Judge who chairs a hearing to fulfill two duties: (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 48 (2010). 

Here, during the April 2011 hearing, the undersigned Veterans Law Judge noted the issues on appeal. Also, information was solicited regarding the Veteran's history, current symptoms, and treatment related to his conditions as well as the impact such have on his daily life and employment. Therefore, not only was the issue "explained . . . in terms of the scope of the claim for benefits," but "the outstanding issues material to substantiating the claim," were also fully explained. See Bryant, 23 Vet. App. at 497. Furthermore, additional development was undertaken subsequent to the hearing in order to ensure that all necessary evidence was of record. As such, the Board finds that, consistent with Bryant, the undersigned Veterans Law Judge complied with the duties set forth in 38 C.F.R. 3.103 (c)(2) and that the Board may proceed to adjudicate the claim based on the current record.

Thus, the Board finds that VA has fully satisfied the duty to assist. In the circumstances of this case, additional efforts to assist or notify the Veteran in accordance with the VCAA would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991) (strict adherence to requirements of the law does not dictate an unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case; such adherence would result in unnecessarily imposing additional burdens on VA with no benefit flowing to the Veteran); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to the Veteran are to be avoided). VA has satisfied its duty to inform and assist the Veteran at every stage in this case, at least insofar as any errors committed were not harmful to the essential fairness of the proceeding. Therefore, the Veteran will not be prejudiced as a result of the Board proceeding to the merits of his claims.

II. Claim to Reopen

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303 (a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d).

Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. Id.; also Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff'd, 78 F.3d 604 (Fed. Cir. 1996) [(table)].

Where a Veteran served for at least 90 days during a period of war or after December 31, 1946, and manifests certain chronic diseases, such as arthritis, to a degree of 10 percent within one year, from the date of termination of such service, such disease shall be presumed to have been incurred or aggravated in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112, 1137; 38 C.F.R. §§ 3.307, 3.309. 

Alternatively, when a disease at 38 C.F.R. § 3.309 (a) is not shown to be chronic during service or the one year presumptive period, service connection may also be established by showing continuity of symptomatology after service. See 38 C.F.R. § 3.303(b). However, the use of continuity of symptoms to establish service connection is limited only to those diseases listed at 38 C.F.R. § 3.309 (a) and does not apply to other disabilities which might be considered chronic from a medical standpoint. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Rating actions are final and binding based on evidence on file at the time the claimant is notified of the decision and may not be revised on the same factual basis except by a duly constituted appellate authority. 38 C.F.R. § 3.104 (a). The claimant has one year from notification of an RO decision to initiate an appeal by filing a notice of disagreement with the decision, and the decision becomes final if an appeal is not perfected within the allowed time period. 38 U.S.C.A. § 7105 (b) and (c); 38 C.F.R. §§ 3.160 (d), 20.200, 20.201, 20.202, and 20.302(a).

Generally, a claim which has been denied in an unappealed Board decision or an unappealed RO decision may not thereafter be reopened and allowed. 38 U.S.C.A. §§ 7104 (b), 7105(c). The exception to this rule is 38 U.S.C.A. § 5108, which provides that if new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim. 

New evidence means existing evidence not previously submitted to agency decision makers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156 (a). 

The Court has held that the determination of whether newly submitted evidence raises a reasonable possibility of substantiating the claim should be considered a component of the question of what is new and material evidence, rather than a separate determination to be made after the Board has found that evidence is new and material. See Shade v. Shinseki, 24 Vet. App. 110 (2010). The Court further held that new evidence would raise a reasonable possibility of substantiating the claim if, when considered with the old evidence, it would at least trigger the Secretary's duty to assist by providing a medical opinion. Id.

For the purpose of establishing whether new and material evidence has been submitted, the credibility of the evidence is to be presumed. Justus v. Principi, 3 Vet. App. 510, 513 (1992).

The Veteran initially claimed entitlement to service connection for right hand frostbite in February 2008. In a decision issued in June 2008, the RO considered the Veteran's service treatment records as well as post-service VA treatment records. The RO found that the record did not show that this condition had been clinically diagnosed or that this condition had been incurred in service.

In this regard, the Veteran's service treatment records are negative for complaints, treatment, or diagnoses referable to right hand frostbite. Furthermore, the Veteran's post-service treatment records were negative for any complaints, treatment or diagnoses for right hand frostbite or any other right hand condition. The Veteran was advised of the decision and his appellate rights in a June 2008 letter. He filed a notice of disagreement in July 2008 and a statement of the case was issued in October 2008. Furthermore, he perfected his appeal in a November 2008 VA Form 9. However, during the April 2011 Board hearing, the Veteran withdrew his appeal in his claim for service connection for right hand frostbite. The Board officially dismissed the Veteran's appeal in the June 2011 Board decision and remand. Therefore, the June 2008 rating decision is final. 38 U.S.C.A. § 7105 (c) (West 2014); 38 C.F.R. §§ 3.104, 20.302, 20.1103 (2016). In this regard, the Board has considered the applicability of 38 C.F.R. § 3.156 (b), which provides that, when new and material evidence is received prior to the expiration of the appeal period, it will be considered as having been filed in connection with the claims which was pending at the beginning of the appeal period. However, in the instant case, such regulation is inapplicable as no evidence pertaining to the Veteran's claim for service connection for right hand frostbite was received prior to the expiration of the appeal period stemming from the June 2008 rating decision. See also Bond v. Shinseki, 659 F.3d 1362, 1367 (Fed. Cir. 2011); Roebuck v. Nicholson, 20 Vet. App. 307, 316 (2006); Muehl v. West, 13 Vet. App. 159, 161-62 (1999).

The evidence received since the June 2008 rating decision includes additional VA treatment records dated through December 2016. However, while such records document treatment for a variety of conditions, they do not reflect findings, treatment, or diagnoses referable to right hand frostbite or residuals from such a condition.

Additionally, while the Veteran has submitted statements regarding the onset and continuity of pain associated with his claimed right hand frostbite during the course of the appeal, such are duplicative of his contentions that were previously of record at the time of the June 2008 rating decision. Specifically, he simply continues to contend that his condition is the result of service. 

Therefore, the Board finds that the evidence received since the June 2008 rating decision is cumulative or redundant of the evidence of record at the time of the prior decision and does not raise a reasonable possibility of substantiating the Veteran's claim of service connection for residuals of frostbite of the right hand. Consequently, new and material evidence has not been received to reopen such claim and the Veteran's appeal must be denied. 

III. TDIU

The Veteran generally contends that his service connected depression and duodenal ulcer prevent him from securing or following any substantially gainful employment.

A total disability evaluation may be assigned when the schedular evaluation is less than 100 percent where a Veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, this disability shall be ratable at 60 percent or more, or if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16(a).

If a claimant does not meet the aforementioned criteria, a total disability evaluation may still be assigned, but on a different basis. It is the established policy of VA that all Veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. 38 C.F.R. § 4.16 (b). Therefore, the rating boards are required to submit to the Director, Compensation Service, for extra-schedular consideration all cases of Veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in 38 C.F.R. § 4.16 (a). Id. 

In determining whether a Veteran is unemployable for VA purposes, consideration may be given to the Veteran's level of education, special training, and previous work experience, but not to age or any impairment caused by nonservice-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19; see also Hersey v. Derwinski, 2 Vet. App. 91, 94 (1992); Faust v. West, 13 Vet. App. 342 (2000). A Veteran need not show 100 percent unemployability in order to be entitled to a TDIU. Roberson v. Principi, 251 F.3d 1378, 1385 (Fed. Cir. 2001).

Initially, the Board observes that the Veteran is currently service-connected for duodenal ulcer, evaluated as 10 percent disabling as of March 25, 1964, 20 percent disabling as of October 24, 1976, and 30 percent disabling as of January 13, 2005; depressive disorder evaluated as 20 percent disabling as of January 26, 2005, 30 percent disabling as of July 9, 2008, and 40 percent as of January 8, 2010; and tinnitus evaluated as 10 percent as of November 6, 2015. The Veteran's combined evaluation was 10 percent as of March 25, 1964, 20 percent as of October 24, 1976, 30 percent as of January 13, 2005, 40 percent as of January 26, 2005, 50 percent as of July 9, 2009, and 60 percent as of November 6, 2015. Therefore, the Veteran's service-connected disabilities do not meet the schedular requirements for a TDIU under 38 C.F.R. § 4.16 (a). However, the Veteran is not precluded from the award of such on an extra-schedular basis. 38 C.F.R. § 4.16(b). 

Therefore, the issue is whether the Veteran's service-connected disabilities preclude him from engaging in substantially gainful employment (i.e., work which is more than marginal, that permits the individual to earn a "living wage"). Moore v. Derwinski, 1 Vet. App. 356 (1991). The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is recognition that the impairment makes it difficult to obtain or keep employment, but the ultimate question is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether he can find employment. Van Hoose v. Brown, 4 Vet. App. 361 (1993). VA has defined "substantially gainful employment" in the Adjudication and Procedural Manual as "employment at which nondisabled individuals earn their livelihood with earnings comparable to the particular occupation in the community where the Veteran resides." See M21-1 IV.ii.2.F.24.d. (formerly Manual M21-1MR, Part VI, Section 7.09(7)).

Additionally, marginal employment shall not be considered substantially gainful employment. 38 C.F.R. §4.16 (a). Marginal employment generally shall be deemed to exist when a Veteran's earned annual income does not exceed the amount established by the United States Department of Commerce, Bureau of the Census, as the poverty threshold for one person. Id. Marginal employment may also be held to exist on a facts found basis when earned annual income exceeds the poverty threshold. Id. Such situations may include, but is not limited to, employment in a protected environment such as a family business or sheltered workshop. Id. 

In this case, the Veteran has stated that he retired from employment in 2001 due to his non-service-connected physical disabilities, noted as knee and back disabilities. He collects income from the SSA for these injuries. See VA treatment record dated January 2008; May 2009 VA examination; and July 2010 VA examination. 

In May 2009, the VA mental health examiner stated that the Veteran's depression did not cause occupational impairment. 

In August 2009, the Veteran had a VA examination for his service-connected duodenal ulcer. The examiner noted that the Veteran retired from employment in 2001 due to his low back condition. The examiner found that the duodenal ulcer had moderate impact on chores; mild impact on shopping, exercise and traveling; and no impact on sports, recreation, feeding, bathing, dressing, toileting, or grooming.

In July 2010, a VA mental health examiner found that the Veteran's depression caused deficiencies in thinking and mood, and caused reduced reliability and productivity due to severe difficulty in dealing with anxiety and depressed mood.

In April 2011, the Veteran testified that he could not work due to his depression and his back condition. He said he was let go due to his conditions. 

The August 2011 VA examiner noted that the Veteran stopped working in 2001 due to a back injury. The Veteran reported that he wanted to work but could not because of his back. The examiner stated that no mental condition was evident that would preclude sedentary occupational functioning. The examiner observed that the Veteran's age, multiple physical conditions, and Social Security disability make the likelihood of being hired very unlikely. The examiner observed that the Veteran had meaningful relationships and was able to engage in basic activities of daily living in his home and yard. He further stated that the Veteran's primary limitations were related to his health conditions and not mental conditions. His inability to engage in some physical activities could exacerbate his depression while his ability to engage in basic activities of daily living could decrease his depressive symptoms. 

In July 2013, the Veteran reported that he was motivated to do things at home, including tending to his garden. He was not employed and was receiving SSA disability benefits due to a nonservice-connected back disability. The examiner confirmed that his depression did not rise to the level of total occupational or social impairment.

In August 2014, the Veteran had a VA examination for his service-connected duodenal ulcer. The Veteran reported that the condition did not cause incapacitating episodes. The examiner opined that the condition did not impact the Veteran's ability to work.

In September 2014, the VA mental health examiner was unable to find any deficits in any of the occupational domains that would impair the Veteran's occupational functioning. The examiner found no identifiable deficits in communication, social interactions, cognitive functioning, or the ability to follow simple or complex instruction. The Veteran maintained meaningful relationships and engaged in routine, normal behaviors (activities of daily living), maintained self-care and hygiene, and maintained conversation. The examiner opined that the Veteran's depressive disorder caused occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation.

In December 2015, the Veteran again had a VA examination for his service-connected duodenal ulcer. The Veteran reported 3-4 episodes per week of epigastric burning, nausea, vomiting, diarrhea with cramps and severe flatulence with tenesmus. The Veteran claimed that when his symptoms occurred, he would double over and have to remain that way until the symptoms pass, anywhere from 5 minutes to 2 hours. 

In December 2015, the Veteran also underwent a VA examination for his service-connected tinnitus. The Veteran reported that his tinnitus impacted his overall functioning in that it caused sleep disturbances. 

Following the November 2015 Board decision and remand, where the Board noted that the evidence suggested that in light of the baseline severity of his depression and the remainder of the evidence of record that the Veteran may be unemployable due to his service-connected disabilities, the Veteran's claim was forwarded to the Director of Compensation Service for an evaluation of TDIU on an extraschedular basis. In October 2016, the Director of Compensation Service found that after a review of the Veteran's record, including his own reports of retiring on disability due to non-service connected conditions, that entitlement to a TDIU due to service-connected disabilities on an extra-schedular basis in accordance with 38 C.F.R. § 4.16 (b) was denied. The Director of Compensation Service found that the evidence of record did not reflect that the Veteran could not obtain or maintain gainful employment or perform the occupational requirements necessary in a physical or sedentary work environment due to his service-connected disabilities. The Director noted that the Veteran's record did not show any hospitalizations, surgeries or intensive outpatient treatment for his ulcer or tinnitus. In addition, the Director noted that the evidence did not reveal any hospitalizations, emergency room visits, or intensive treatment programs for the Veteran's depressive disorder. That while the evidence indicated that the Veteran took medication and attended therapy sessions, his treatment records revealed no cognitive deficits and only mild depression. The Director determined that the objective evidence did not support the Veterans contention that any of his service connected disabilities or a combination of the effects of his disabilities prevented all types of gainful employment and therefore denied entitlement to a TDIU. 

Therefore, the Board finds that the Veteran's service-connected disabilities did not render him unable to secure and follow a substantially gainful occupation consistent with his education and work history. In this regard, while the Veteran reported leaving prior employment due to his service-connected disabilities and that such did, in fact, impact his ability to perform certain types of work, the foregoing evidence reveals that the Veteran is capable of gainful employment and that he retired from such work due to non-service connected conditions. Therefore, while his service-connected disabilities result in some functional limitations, they do not preclude the Veteran's ability to secure and follow a substantially gainful occupation consistent with his education and work history.

For all the foregoing reasons, the claim for a TDIU must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as no competent, probative evidence supports the claim, that doctrine is not applicable. See 38 U.S.C.A. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).



ORDER

New and material evidence not having been received, the application to reopen a claim of entitlement to service connection for residuals of frostbite of the right hand is denied.

Entitlement to a TDIU is denied. 



____________________________________________
L. M. BARNARD
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs